The next case is Kroemer v. Tantillo. May I please the Court? Kent Kroemer, Plaintiff Pro Se. I'll be focusing on the Brady issue in this 1983 action, whereby in November 2016, I uncovered prejudgment constitutional violations by defendants when discovering defendants Fisher and Smith withheld specifically requested exculpatory evidence pertaining to my now 30-year-old criminal case. I would like to bring the Court's attention to a case I found yesterday from this Court, and I beg your forgiveness for not citing it and not finding it earlier, but the underlying facts of that case are almost identical to mine. The case is de Blasio v. City of New York, 102, Fed 3rd, 654. It's a 1983 action filed after de Blasio was found not guilty after a second trial. He was originally convicted of three separate drug sales in one possession. It was overturned on habeas corpus, affirmed by this Court, 932, Fed 2nd, 1038. It was overturned because the government failed to disclose a confidential informant who could have bolstered an entrapment offense. His defense was that he made the sales because he was made to believe he had to in order to save the confidential informant's life, just like my case. On retrial, all 12 jurors found de Blasio not guilty of the three sale charges. Like de Blasio, I'm not predisposed to sell drugs at the time the December action took place. I made a conscious decision to quit dealing drugs, to not sell drugs. In the de Blasio case, as you said, the conviction was overturned. Yes. That didn't happen in your case, correct? I've not had the conviction overturned. I'm hoping, well, after this case, I'm hoping we will get that overturned, which is part of the injunctive relief I'm asking from Mr. Tantilla. But I wasn't predisposed to sell drugs as a married man. That's a conscious decision. That's my decision, my state of mind. In my case, the undisclosed government informant was Susan Miles. She could bolster my entrapment defense that I was under the impression that I was saving her life, her kid's life, and informant Dave Miles' life. She could have also bolstered my defense that the first sale in question occurred on October 13th and not November 11th.  Now, I can't get those letters in evidence because they were not withheld by Fisher and Smith. They were withheld by Tantilla and his informant, David Miles. But she knew about the knowledge of the letters and the contents of the letters, which I found out in 2006. But I did not know her knowledge was imputed to the government until 2016, well within the statute of limitations of filing this case. Sue Miles would have led to several individuals which knew a lot of exculpatory evidence, especially Martin Gomez, which I found out in October 2017 he was gambling with Dave Miles on November 4th. That's important because the prosecution's evidence was that Miles lost in Atlantic City gambling the $4,500 he owed from the first sale in question. The jury even inquired, when did Miles go on a gambling binge in Atlantic City? We know that is now November 4th. So if he lost the $4,500 gambling in Atlantic City on November 4th, the sale could not have taken place on November 11th. It would have had to have taken place early in the morning on November 4th, which was the original indictment date, or sometime before that. Or on October 13th. I'm sorry? Or in October, as was your theory. Correct. Actually, it would have had to be because I wasn't in New York State between October 16th and November 11th. So, yes, it would have been November 13th. And regardless of predisposition, the monthly sales, regardless that the monthly sales of Miles had stopped in October, once I got married, no longer predisposed. And here's where the lower court erred. The outrageous government conduct. He applied the federal standard instead of the state standard. And the state standard gives me more protection. And what he should have done is applied the four factors laid out in Isaacson at 44NY2D at page 521. I went into that in my brief. And the premise of Isaacson is that an outrageous government conduct is when you create a crime that otherwise wouldn't have taken place in this state. The government's job is to prevent crime, not to create the crime. I'm 3,000 miles away. I'm retired from dealing drugs. Miles says, come on in, come on in. I say no. I keep saying no. Finally, he gets me to come back in under this outrageous ruse that I have to come in to save his life from these fictitious Puerto Rican drug dealers. And now we come to Defendant Fisher, who would have been called to testify if I had known about Sue Miles being the confidential informant. His testimony would have led to an in-trial prosecutorial misconduct motion. In June of 2016, Defendant Tantillo doubles down, and he says he doesn't lie. He didn't lie to the court in May of 89. That's in Appendix 27 through 28. He says we were able to pinpoint the date. He says we because he's talking about Miles and the government. He says that in Appendix 76. He also says Miles said it occurred on a new date. He says that at Appendix 100. And I believed this until November of 2016, and that's when I discovered that Fisher didn't know about the indictment date being amended. Fisher's testimony, he says Miles couldn't remember specific dates. And he says he's unclear on the dates. And Fisher, he is Miles' handler. He's assigned to talk to Miles. So the question becomes, did Defendant Smith go to Fisher to talk to Miles about new dates upon Smith receiving Tantillo's May 3rd secret memo? The answer is no, because of Fisher's testimony. Before you run out of time, how do you address the statute of limitations question? You were making Brady arguments in the mid-1990s. Correct. I always thought that, for instance, originally I thought at sentencing that Miles destroyed the tapes. The point is you believe that there was a Brady violation back then. Different Brady violations. Brady is cumulative. So it's cumulative. I didn't know Sue Miles was a confidential informant. So all this cumulative evidence, now I have Sue Miles as part of the government, and all her knowledge is imputed to the government. I didn't know that until 2016. And I don't know about the ancillary evidence of all these other people that Sue Miles knew, as well as especially Martin Gomez, who purely shows that he's not guilty of all, not guilty of the October charges, November charges, which took place in October. And the thing is, Miles said he's unsure of the date. I know what the date is. I'm positive. It was October 13th. The other thing is there's a true case in controversy with respect to Mr. Tantillo. I asked for declaratory relief, and I'm asking for an injunctive relief. In Teichman, the declaratory relief he was looking at was a finding for an issue of fact. I'm looking for a finding of an issue of law on declaratory relief. And then I springboard off that to get the injunctive relief that Mr. Tantillo's successor, who is now Mr. Ritz, concede to a subsequent 440 motion to concede to it. That raises that same constitutional violation. Good morning. May it please the Court. I'm Megan Masline, and I represent Defendant Appellee R. Michael Tantillo in this case. We ask that the Court affirm the District Court's dismissal of Mr. Cromer's complaint because Mr. Tantillo is entitled to absolute immunity. Heck v. Humphrey bars Mr. Cromer's claims, and in the event that Heck does not bar Mr. Cromer's claims, they are untimely. As to the absolute immunity, Mr. Tantillo is entitled to absolute immunity when he is making a motion to amend the indictment because that is a function that is reserved to the prosecutor. At that point, Mr. Cromer had already been arrested, indicted, and arraigned, and clearly the judicial phase of the criminal process was in effect at that time. He was a or one of the prosecutors? He was the prosecutor assigned to Mr. Cromer's case at that time. While absolute immunity does not bar, or bars the claim for damages, and does not bar a claim necessarily for injunctive or declaratory relief, the equitable relief that Mr. Cromer is seeking here is the functional equivalent of requesting that this Court declare his criminal conviction invalid. This is not the appropriate vehicle or the appropriate forum for Mr. Cromer to do so, since his conviction is still valid. Moving to the HECC issue, to recover monetary damages, the HECC rule is that a Section 1983 plaintiff must prove that his criminal conviction was reversed, expunged, called into question, or invalidated. At this point, Mr. Cromer's conviction is still valid. It has not been called into question, and in fact, throughout the 30 years that Mr. Cromer has challenged his criminal conviction, every court has affirmed, on direct appeal it was affirmed through 440 motions in state court, and Mr. Cromer pursued unsuccessfully a habeas petition. Where this Court's recognized an exception to HECC is where habeas was never reasonably available to the plaintiff. Here, Mr. Cromer had an opportunity to pursue habeas while he was incarcerated for 15 years, and in fact did so. If Mr. Cromer had access to a federal forum, this is not the case where an exception to HECC has been recognized. As to the statute of limitations argument, if Mr. Cromer's claims are barred by HECC, at this point Mr. Cromer's claims have not accrued yet due to the delayed accrual rule that HECC has on the statute of limitations. In the event this Court does find that an exception to HECC is applicable here, his claims are still untimely. Mr. Cromer has been arguing since his conviction in 1989 that the motion to amend the indictment was improperly granted. He was aware of that in 1989, and in fact challenged it throughout the years. Mr. Cromer says that in 1998, when he obtained the secret memo that Tantello wrote to defendant Fisher, that he knew that Tantello allegedly fabricated the evidence. In 1998, thus, Mr. Cromer knew or should have known of the injury at that time. Therefore, his claim would have expired in 2001. So, at the heart of Mr. Cromer's Section 1983 action is yet another attempt to collaterally attack and overturn his criminal convictions. This form is not the appropriate vehicle for Mr. Cromer, and the Court cannot reconcile Mr. Cromer's claims with his valid outstanding conviction. We ask the Court affirm the District Court's dismissal of Mr. Cromer's complaint. Thank you. Thank you. May it please the Court, Patrick Woods on behalf of Defendants Smith and Fisher. There are four bases that we laid out in the brief for affirmance here, any of which are sufficient. Ms. Maslin discussed three, so I'll start off with the fourth, which is qualified immunity. That's unique to the two former state trooper.  Which is that at this time, the evidence which Mr. Cromer alleges was suppressed, it wasn't clear, it wasn't clearly established that the officers would have had an independent obligation without even an allegation that they were asked by Defendant Tantillo to turn it over to him, which would have satisfied his obligation to do so. Defendants are entitled to qualified immunity where they're acting reasonably and not contrary to clearly established law. The law on that issue was not clearly established with respect to their obligations in 1988, and as a consequence, they would be entitled to qualified immunity here. That has the benefit of allowing the Court to avoid some of the trickier issues, if that's the direction the Court is interested in going. And I'd like to come back to some of those with respect to the merits in particular. There's essentially two threads in the merits. One is that the first conviction would have been invalid, would have been shown to be invalid by offering proof that it, in fact, took place in October. There's a problem with that that is also a problem with the entrapment defense, which is that it's on its face somewhat implausible that a new trial, reasonable new trial strategy was available by which the defendant would put forward evidence that he had, in fact, committed a prior felony drug crime for which he had not been charged and for which the statute of limitations was open. If, as Mr. Cromer suggests, he was to get on the stand and testify that on October 13th he sold cocaine to Mr. Miles, that's a separate felony for which he was entirely chargeable. Second, as the district court. And the district court, this was the ground on which the district court went, concluding that there wasn't, the entrapment defense would have had no reasonable likelihood of success. The district court concluded that on other grounds, which is what I was about to turn to, which are that even if Mr. Cromer had testified that he had a month and a half prior to the sale, for the December sale, given up the drug trade, the evidence for that, no reasonable jury would have believed that or could have credited that defense, because Mr. Cromer, for one, at the transcript of his drug bust, is negotiating price and quantity with Mr. Miles, which is not consistent with him coming in solely to save his friend's life. He's still looking to get paid after and flying into New York to get paid by his own account after he supposedly gives up the drug trade on the date for which he was convicted of the first offense. And at the time of the drug bust, he still indicates that he has lots of cocaine. It's not even clear from that that he's planning to sell all of what he has to Mr. Miles. It looks like he has other cocaine or he's hoping to sell it all, but he isn't necessarily going to. None of that is indicative of an individual who has been entrapped and his will has been overcome. And relatedly, turning to Isaacson, the standard under Isaacson is extremely high. And as an example of that, if you look at the New York Court of Appeals decision citing Isaacson and the Appellate Division decision citing Isaacson, since it was decided, in that 40-year period, there has been only one other case in which Isaacson has been found to be met. That case was blatantly egregious. It's the Fourth Department case from 1992 where two drunken officers extorted the defendant in his home in the middle of the night to give them cocaine because they said that he had been cheated in a prior cocaine deal. And when the defendant produced the cocaine, they arrested him for possession. That's the level of egregious conduct that Isaacson addresses. Not here, where the police use an informant who had been a long-time buyer of the plaintiff to have one more sale get made. Unless the Court has questions on any of the other issues, the Court could just as well affirm on the statute of limitations question or on the heck issue. And just for one brief comment on heck is that it would be a significant extension of heck, I think. This Court's limited, clear jurisprudence on heck to extend it to apply to this case, where the defendant has not — has had the opportunity to challenge it, has challenged it, has appealed that all the way to the Supreme Court of the United States and lost. Would that also be further than any other circuit court has taken heck jurisprudence? It would be the farthest that any court has taken it, as far as I'm aware. And it would be doing so in a way that even in heck, at the time of heck, couldn't have been contemplated as the level of conflict with the habeas statute because the effective death penalty and anti-terrorism act wasn't in effect at the time that heck was decided. And the collision that comes in after that is even larger with regard to second or successive petitions, and it would be before that. Thank you. Something the Supreme Court hasn't addressed, which is an interesting scenario, and it may someday address that, is I wonder how heck would have ruled had they known the AEDPA had gone into effect. Because what's happened is that people with constitutional violations cannot bring in those constitutional violations on a second successive habe unless they are completely innocent. So that's another scenario that may be saved for another day. With respect to counsel, at one point they're almost raising a Monell claim for me, where they're saying that Mr. Chantillo, who is an assistant DA, failed at his duty and at his training that he didn't bring forth a specific request to the police, even though the police gave me all the other specifically requested material. So I don't think I have to plead that Mr. Chantillo sent a specific request over to the state police. As for them not knowing about their duty, Giglio in 72, the government was a whole. And that's what Giglio ruled, even though they were playing musical chairs with district attorneys. If the state police wants to say they weren't part of the government or they didn't know they were part of the government, that's a different argument. They know they're part of the government. All Kyles and Walker did was explain that Giglio still survives in the government as a whole, and it includes the state police. And the Ninth Circuit addressed that in 2015, and I argued that in my reply brief. As for the entrapment, entrapment is when you are first contacted by the police. When I'm first contacted by the police, I'm saying no, no, no, no, no. After the fact, now I come in. And I think counsel plays footloose and fancy-free with some of the facts there, and I explained that in my reply with respect to his argument on that, and I do see my time is up. Thank you both. Thank you very, very much. That's the last case to be argued on the calendar this morning, so I'll ask the clerk to adjourn court. Thank you.